IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIMMARA SUMRALL<br><br>*Plaintiff,*<br><br>v.<br><br>JANINE ALI<br><br>*Defendant.* | Case No. 1:25-cv-02277 (TNM) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**..................................................................................................ii

**INTRODUCTION**..................................................................................................................1

**FACT BACKGROUND**..........................................................................................................2

**D.C. SUPERIOR COURT PROCEEDINGS** ......................................................................5

**ARGUMENT**...........................................................................................................................7

    **A.**    **Applicable Standard**..................................................................................7

    **B.**    **Plaintiff Has Not Established Irreparable Harm**................................7

    **C.**    **Plaintiff Has Not Shown a Likelihood of Succeeding on the Merits**...............................10

    **D.**    **Balance of Equities Favors Defendant and an Injunction Is Not in the Public Interest**....12

**CONCLUSION**........................................................................................................................12

**APPENDIX** ..............................................................................................................................13

# TABLE OF AUTHORITIES

**CASES**                                                                                                    Page(s)

*Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416 (D.C. Cir. 1986)..........................11, 12

*Booth v. Bowser*, 597 F.Supp.3d 1 (D.D.C. 2022)........................................................................10

*\*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006).........................7

*\*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738 (D.C. Cir. 1995) …………….10

*Dellinger v. Bessent*, 2025 WL 559669 (D.C. Cir. 2025) …………………………………........7

*Fed. Bld'g Contractors Assoc. v. Penn.*, 102 S. Ct. 3141 (1982) ……………………………….11

*J.G.G. v. Trump*, 772 F.Supp.3d 18 (D.D.C. 2025) ……………………………………………7

*League of Women Voters v. Newby*, 838 F.3d 1 (D.C. Cir. 2016) ……………………………..7

*Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999) ……………………………………………..1

*Moinin v. Wrighton*, 602 F. Supp. 3d 162 (D.D.C. 2022) ……………………………………10

*\*Phillip v. Univ. of Rochester*, 316 F.3d 291 (2d Cir. 2003) ……………………………………11

*\*Save Jobs USA v. Dep't of Homeland Security*, 105 F.Supp.3d 108 (D.D.C. 2015)...............7, 10

**STATUTES**

42 U.S.C. § 1981 ……………………………………………

D.C. Code § 22-404(a)(1) ………………………………………..

**INTRODUCTION**

> [F]ederal courts must guard against the litigant who frames a pretextual federal issue solely for the purpose of having a state-law claim adjudicated in the federal system; Article III of the Constitution forbids this practice. *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999).

The Plaintiff in this case alleged that the Defendant, Ms. Janine Ali, assaulted her, thereby initiating a criminal prosecution for simple assault and commencing a corresponding civil case for assault in the D.C. Superior Court. The civil case was stayed pending the outcome of the criminal case. Ms. Ali was found not guilty of the charge in a bench trial before Judge John M. Campbell, Senior Judge of the D.C. Superior Court. The judge in the civil case, Judge Julie Becker, then scheduled an evidentiary hearing on Plaintiff's application for a TRO and preliminary injunction. Plaintiff could not get her key witness, the arresting Capitol Police Officer, to testify despite subpoenas issued from the D.C. Superior Court and this court. On the verge of loosing her civil case, Plaintiff and her counsel came shopping to this court, fabricating a federal case by using 42 U.S.C § 1981 as the pretext for adjudicating a host of newly-asserted state-law tort and civil rights claims. That fabrication entails distorting facts, innuendo, alleging specious, irrelevant and/or unsupported facts, and making legal conclusions disguised as factual allegations. Worse still, Plaintiff envelops her claim in the shroud of religious antisemitism, *conflating honest and widespread criticism of Israel's policies in Palestine with anti-Jewish hate*, and uses a controversial definition of antisemitism as the basis for Ms. Ali's alleged descriminatory intent.

A fair reading of the Complaint reveals how exaggerated and specious it is. Stripped of its exaggeration and irrelevant allegations, this case is nothing more than a claim of alleged assault, albeit attenuated now. The case deserves dismissal based on its pretextual federal

question jurisdiction, with the Plaintiff sent back to the D.C. Superior Court to adjudicate her claims. For the same reason, the court can exercise its discretion and withdraw its jurisdiction, dismissing the case under the equitable-restraint doctrine to allow the parallel D.C. Superior Court case to continue.

Short of that outcome, the Court should deny Plaintiff's motion for a TRO and preliminary injunction because there is no threat of imminent and irreparable injury to her. The status quo of this case was that Plaintiff was about to lose her stay away order against Ms. Ali. Continuing the stay away via a TRO and preliminary injunction would further treat Ms. Ali as a criminal and prevent her from attending pro-Palestinian demonstrations out of fear that Ms. Sumrall will show up as a counter demonstrator and risk Ms. Ali violate the injunction. That situation, among other things, implicates Ms. Ali's First Amendment rights.

## FACT BACKGROUND

On the morning of Wednesday, November 13, 2024, a group of approximately 25 people came to the Dirksen Senate Office Building to peacefully lobby.[1] They intended to walk through the building's halls and mourn the Palestinian children killed by the bombing in Gaza, as well as visit Senators' offices to hand-out postcards bearing the picture of a child killed with the message Every Life is Precious.[2] A copy of one of those postcards appears in the Appendix to this Opposition. Contrary to the Plaintiff's allegations, the demonstration and lobbying that day was not "an anti-Israeli demonstration." Verified Complaint, Dkt. 1 ("Compl.") ¶ 12.

---

[1] Except where otherwise noted, the facts described in this Background section are based on testimony and exhibits in Ms. Ali's criminal trial. *See* Ex. A (May 19, 2025 Trial Transcript), Ex. B (May 20, 2025 Trial Transcript). Specific citations to the Trial Transcript are provided where necessary.
[2] Ex. A at 82:23-83:12 (Ms. Ali explaining Postcard).

2

Ms. Ali was one of the people participating in that lobbying.  Ms. Ali was born in Dearborn, Michigan and is a retired travel agent.  She's lived in Arlington, Virginia for the past 40 years.  She arrived late that morning because of difficulty finding a handicapped parking spot.  Once in the Dirksen building, she headed to the meeting spot, which was at the building's cafeteria.  The Dirksen cafeteria has an outer section and a smaller inner section.  Her group, the Code Pink group, was to meet up in the inner section.  Code Pink Women for Peace is an organization founded in 2003, in response to the U.S. invasion of Iraq.  Code Pink unites women around the world, emphasizing non-militarism, peaceful resolution of conflicts, and cuts to the Pentagon budget.  The group is present regularly on Capitol Hill to lobby and non-violently demonstrate in support of these issues.[3]

On that day a group of eight counter-demonstrators, including Ms. Sumrall, also showed up in the cafeteria.  Contrary to the Plaintiff's allegations, they did not show up for a "Pro-Israel demonstration."  Compl. ¶ 10.  They showed up to demonstrate against Code Pink and *would not have been at the cafeteria* if Code Pink was not there.  The Capitol Police identified this group as the Betar group.  Betar U.S. describes itself as "loud, proud, aggressive, and unapologetically Zionist," whose mission, among other things, is to confront pro-Palestinian demonstrations and persons like Ms. Ali.[4]  It has been designated as an extremist and hate group by the Anti-Defamation League.[5]  Ms. Sumrall is the director of Betar D.C.  The contrast between Betar U.S.'s and Code Pink's ethos is readily apparent if one views their respective websites.

---

[3] Code Pink Website, https://www.codepink.org/, last visited July 19, 2025.
[4] Betar US Website, https://betarus.org/, last visited July 19, 2025.
[5] *See* Betar USA, *ADL Database of Extremism and Hate*, https://extremismterms.adl.org/glossary/betar-usa, last visited July 19, 2025; Anna Betts, "Pro-Israel group says it has 'deportation list' and has sent 'thousands' of names to Trump officials," *The Guardian* (Mar. 14, 2025), https://www.theguardian.com/us-news/2025/mar/14/israel-betar-deportation-list-trump.

3

Video of the scene in the cafeteria that morning shows that counter-demonstrators were provocative and vilified the Code Pink group as it walked past them on the way to the meeting point, which was in the inner section of the cafeteria. The police had formed a barrier between the two groups.

When Ms. Ali arrived at the cafeteria there were many Capitol Police officers present. Ms. Ali thought she was in the wrong place and called her group's media coordinator to confirm the meeting spot. The media coordinator directed her to the inner section of the cafeteria. To get there, Ms. Ali had to navigate a narrow ramp that had become crowded with police officers to her left. Ms. Sumrall, wearing the Israeli flag as a cape, had broken away from the Betar group, come into the inner section, and positioned herself near the top of the ramp, to the right of the ramp. Thus, Ms. Ali had to pass close to Ms. Sumrall to get to the Code Pink group.

Ms. Ali still had her phone in her right hand as she walked towards the ramp. She has Dupuytren's Contracture in her right hand, a condition that prevents her from closing the two middle fingers and requires a special device on her phone so she can grasp it. On that day, she was wearing a pink keffiyeh—a shawl—draped over her shoulders that came down to her waist. When Ms. Ali approached the ramp, Ms. Sumrall was facing away from her and was distracted talking on her phone. As Ms. Ali passed Ms. Sumrall, two things happened: One, Ms. Sumrall stepped backwards; two, Ms. Ali's pink keffiyeh brushed the flag draped around Ms. Sumrall. At that point, Ms. Sumrall turned around and started shouting that Ms. Ali tugged on the flag, even though she did not see Ms. Ali as she was faced away from her. In the instant Ms. Ali passed Ms. Sumrall, the keffiyeh and flag likely entangled. The defense's eye-witness testified unambiguously at the criminal trial that there was no contact between the two and that Ms. Ali

4

did not pull on the flag.[6] When Ms. Sumrall stepped back, she likely stepped on the flag causing it to pull her head back. There was no tugging, touching, threatening gesture, or malice by Ms. Ali of or towards Ms. Sumrall.

The Gerstein affidavit by officer Bonney states that Ms. Ali declared "All I did was grab it." But Ms. Ali did not make that statement as a declaration. She did not have her hearing aid in that day, and she asked the officer incredulously, "I grabbed the flag?" The officer mistook a question for a declaration of fact.

Ms. Sumrall did not request medical help, no injury was noted by the Capitol Police, and no medical report of injury was produced by Ms. Sumrall.

## D.C. SUPERIOR COURT PROCEEDINGS

Ms. Ali was arrested and charged with simple assault without physical injury under D.C. Code § 22-404(a)(1), and prosecuted by the U.S. Attorney's Office in the D.C. Superior Court.[7] The judge in the criminal case issued a stay-away order against her, which ultimately provided she was to stay 100 yards or more away from Ms. Sumrall and her home, and have no other contact with her. Plaintiff concurrently filed a civil action in the D.C. Superior Court. The judge in the civil action stayed the civil case pending the outcome of the criminal case, did not impose a stay away order because one already was in place in the criminal case, and ordered that the stay away would continue after resolution of the criminal case until she resolved Plaintiff's motion for a restraining order and preliminary injunction.[8]

A bench trial was held in the criminal case on May 19 and 20, 2025, before Judge Campbell. He found Ms. Ali not guilty. Among his findings were that the testimony of the

---

[6] Ex. A at 122:18-123:22, 137:16-138:1.
[7] *See U.S. v. Janine Ali*, Case No. 2024-CMD-012091.
[8] *See Sumrall v. Ali*, Case No. 2024-CAB-007244.

5

prosecution's witnesses, Officer Bonney and Plaintiff, "conflicts in some respects with other evidence in the case," including that video of the scene is inconsistent with "Officer Bonney's testimony that he noticed that no other officers saw what happened, which is very difficult to believe, given that the place was crawling with Capitol police officers. . . . [and] they're all watching these two people . . . ."[9]  In contrast, he found Ms. Ali's testimony "credible and internally consistent," and found her "candid as a witness."[10]  Likewise, he found that the Defendant's eye-witness, Ms. Wallace, was watching Ms. Sumrall and Ms. Ali, that Ms. Wallace "was nervous about the situation with Ms. Sumrall standing there," and that "Ms. Wallace didn't see anything happen.  And I found that testimony credible."[11]

As soon after the criminal case ended, Judge Becker scheduled an evidentiary hearing in the civil case for June 17, 2025.  The parties agreed to a continuance for Plaintiff to subpoena Officer Bonney.  The evidentiary hearing was rescheduled to July 17.  However, the Capitol Police would not accept a subpoena issued by the D.C. Superior Court, and this court denied enforcing a subpoena for officer Bonney to testify because the Capitol Police had not waived their sovereign immunity.[12]  Plaintiff moved for a further continuance.  At a status conference on July 10, Judge Becker told Plaintiff's counsel that she was hesitant to extend the stay away into September.  She allowed Plaintiff a short rescheduling of the evidentiary hearing until July 21 for Plaintiff to seek reconsideration of this court's order denying the subpoena.

On July 17,  Plaintiff filed the current case in this court, and the next day gave notice to the Judge Becker that she would not seek an evidentiary hearing on July 21 before her.

---

[9] Ex. B at 23:14-24:9.
[10] *Id.* at 24:10-13.
[11] *Id.* at 25:3-12.
[12] *See* Memorandum Opinion, 25-mc-110 (LLA), Dkt.4.

# ARGUMENT

A. <u>Applicable Standard</u>

The standard for obtaining a TRO or a preliminary injunction is identical. *Dellinger v. Bessent*, 2025 WL 559669 (D.C. Cir. 2025), at *3; *J.G.G. v. Trump*, 772 F.Supp.3d 18, 29 (D.D.C. 2025). Accordingly, the movant must make "a clear showing" establishing that: (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *League of Women Voters v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016); *J.G.G.*, 772 F.Supp.3d at 29-30. The purpose of a TRO and preliminary injunction is to maintain the status quo and prevent irreparable harm. *Dillinger*, 2025 WL 559669 at *3.

B. <u>Plaintiff Has Not Established Irreparable Harm</u>

According to the Court of Appeals, injunctive relief "is an extraordinary remedy" and "the basis for injunctive relief in the federal court has always been irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (inside quotes and citations omitted). Consequently, the Court of Appeals "has set a high standard for irreparable injury." *Id*. That standard requires that the injury "must be certain and great . . . actual and not theoretical," and the moving party must show the injury "is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm," and is "beyond remediation." *Id.* (inside quotes and citations omitted). Absent a showing of irreparable harm, "the court may deny the motion for injunctive relief without considering the other factors." *Save Jobs USA v. Dep't of Homeland Security*, 105 F.Supp.3d 108, 112 (D.D.C. 2015).

Ms. Sumrall cannot meet this standard for two reasons.

7

First, her allegations of irreparable harm are speculative. Plaintiff alleges she will suffer irreparable harm absent injunctive relief because of fear and anxiety that cannot be redressed by monetary damages. But that fear and anxiety is the Plaintiff's own creation and speculative with respect to Ms. Ali:

> Plaintiff here continues to experience anxiety, hypervigilance, and emotional trauma as a direct result of the November 13 assault. Since the attack she has installed home surveillance equipment. Verified Complaint, Dkt. 1 at ¶ 43. The fear of being in close quarters with Defendant again in D.C., especially in the context of repeated demonstrations and Defendant's ongoing participation in antisemitic, anti-Israeli protests, constitutes a present and imminent threat."

Memorandum of Law in Support of Plaintiff Kimmara Sumrall's Motion for a TRO and Preliminary Injunction, Dkt. 5-1 ("Pl's Mem.") at 12. The allegations in paragraphs 39-43 of the Complaint upon which the above allegations are based do not refer to Ms. Ali as the actor and it is speculative to infer that they are connected with her because they occurred after a hearing in the case or because they involved a man wearing a keffiyeh.

Equally speculative are Plaintiff's allegations about Ms. Ali's antisemitic animus in paragraphs 19-37 of the Complaint. To begin with, the allegations assume that the International Holocaust Remembrance Alliance definition of antisemitism proffered in paragraph 20 of the Complaint is valid. In fact, the definition contains ambiguities and remains controversial precisely because it conflates criticism of Israel with antisemitism.[13] Using this definition,

---

[13] *See, e.g.*, The Conversation, "When is criticism of Israel antisemitic? A scholar of modern Jewish history explains," *PENNLIVE Patriot News* (Jan. 30, 2024), https://www.pennlive.com/opinion/2024/01/when-is-criticism-of-israel-antisemitic-a-scholar-of-modern-jewish-history-explains-the-conversation.html; "On Antisemitism, Anti-Zionism and Dangerous Conflations," *Jewish Voice for Peace* (Nov. 9, 2023), https://www.jewishvoiceforpeace.org/2023/11/09/antisemitism-dangerous/; "Human Rights and other Civil Society Groups Urge United Nations to Respect Human Rights in the Fight Against Antisemitism," *Human Rights Watch* (Apr. 20, 2023), https://www.hrw.org/news/2023/04/04/human-rights-and-other-civil-society-groups-urge-united-nations-respect-human; Vimal Patel, "How to Define 'Antisemitism' Is a Subject of Bitter

Plaintiff argues that her claim of discriminatory intent is based on direct and circumstantial evidence. *See* Pl's Mem. at 7. She contends that the alleged assault is direct evidence of Ms. Ali's anti-Jewish animus, while Ms. Ali's presence at anti-Israel rallies and affiliation with Code Pink and "other antisemitic groups" is circumstantial evidence of her "animus for Jews." *Id.* She is wrong on both counts.

Plaintiff's argument that the alleged assault is direct evidence of an animus against Plaintiff begs the question by stating a conclusion (assault) as evidence (animus). Moreover, notwithstanding the different standards of proof between a criminal and civil case, the fact that Ms. Ali was found *not guilty* of the alleged assault diminishes any theoretical likelihood that she has an animus or poses a threat to Ms. Sumrall or Jewish people more generally. Further, to infer that Ms. Ali's antisemitic animus and intent to discriminate against Ms. Sumrall is shown by such speculative circumstantial evidence as an alleged ideological affinity with Code Pink, the naming of Ms. Ali's son, or her participation in Code Pink's demonstrations and street theater—let alone that the alleged animus rises to the level of an imminent, actual, and great harm to Plaintiff requiring injunctive relief—is ludicrous. The inference is nothing more than a legal conclusion—intent to discriminate—couched as fact allegations.

Second, Ms. Ali does not care to attend events supporting Israel that Ms. Sumrall would attend. But Ms. Sumrall does attend Pro-Palestinian events to harass and/or disrupt them as a counter demonstrator—as she did in the Dirksen cafeteria on November 13, 2024 and this past March 16th at Busboys & Poets.[14] What's kept Ms. Ali apart from Ms. Sumrall since November 13th of last year is not a stay away order but Ms. Ali's disinterest in attending Pro-Israel events

---

Debate.," *New York Times* (May 8, 2024), https://www.nytimes.com/2024/05/08/us/antisemitism-definition-debate.html.

[14] "US Zionist group Betar disrupts Norman Finkelstein Gaza book event," Middle East Eye, https://www.youtube.com/watch?v=SgWRh0ad5YI.

9

as a counter demonstrator.  Ms. Ali does not know Ms. Sumrall, and Ms. Ali does not care to see or demonstrate against Ms. Sumrall.  She never met or spoke to Ms. Sumrall prior to November 13th.  Their social worlds do not intersect except at pro-Palestinian events, which both have a First Amendment right to attend.  Hence, an injunction would not factor into keeping Ms. Ali away from Ms. Sumrall.

For all these reasons, Plaintiff's allegation that absent injunctive relief, "her ability to participate safely in public discourse and express her identity without fear will be compromised," Pl's Mem. at 12, is unsupported and speculative.  Plaintiff has not shown that she will be irreparably harmed absent the injunction.  On this basis alone, the Court should deny her Motion. *See CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (affirming district court's denial of a preliminary injunction because appellant made no showing of irreparable harm on appeal and thus the court "need not reach the district court's consideration of the remaining factors"); *Save Jobs USA*, 105 F.Supp.3d at 112.

C. <u>Plaintiff Has Not Shown a Likelihood of Succeeding on the Merits</u>

To show a likelihood of success on the merits, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Booth v. Bowser*, 597 F.Supp.3d 1, 16 (D.D.C. 2022).  Here, Plaintiff has not shown a likelihood of success on the merits of her Section 1981 claim, the only claim on which the Court's federal question jurisdiction is based.

First, Plaintiff fails to meet the second part of the three-part test stated in *Moinin v. Wrighton*, 602 F.Supp.3d 162, 172 (D.D.C. 2022), namely that the defendant intended to discriminate against the plaintiff on the basis of race.  As discussed in section B above, the direct

10

and circumstantial evidence Plaintiff relies on to support her allegation of discriminatory animus is conclusory and speculative. The allegations in the Complaint do not evidence a "purposeful discrimination" against Ms. Sumrall. *Fed. Bld'g Contractors Assoc. v. Penn.*, 102 S. Ct. 3141, 3149 (1982) (concluding that "§ 1981 reaches only purposeful discrimination").

Second, Plaintiff also fails to meet the third part of the three-part test stated in *Moinin*, that the discrimination concerned an activity enumerated in the statute. The relevant portion of the statute reads:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Plaintiff cites to *Phillip v. Univ. of Rochester*, 316 F.3d 291, 294 (2d Cir. 2003), for the proposition that state action is not required for a cognizable claim under Section 1981. Pl's Mem. at 8. But the Second Circuit's decision in that case is more nuanced. The court assumed in that case that "Section 1981 requires a nexus to state proceedings or laws but not state action." *Phillip*, 316 F.3d at 298. In that case, the nexus was to legal proceedings the defendants attempted to trigger against the African American plaintiff students. Here, Plaintiff's claim has no nexus to being deprived of the full and equal benefit of any District of Columbia proceedings or laws as a result of the alleged assault.

Plaintiff's reliance on *Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416, 1421(D.C. Cir. 1986), is inapposite because that case did not involve a Section 1981 claim based on personal injury. There, the court applied the District of Columbia's three-year statute of limitations for personal injury claims to Section 1981 claims, explaining that racial

discrimination is treated as a dignitary tort and therefore analogous to personal injury claims for the statute of limitations purposes. *Id.* at 1421-23.

As discussed at the beginning of this Opposition, Plaintiff's Section 1981 claim is pretextual for the reasons enumerated in section B above and in this section C. Accordingly, Plaintiff has not shown a likelihood of success on the merits.

    D. <u>Balance of Equities Favors Defendant and an Injunction Is Not in the Public Interest</u>

Plaintiff also does not meet the final two requirements for a preliminary injunction. The equities favor Ms. Ali because (1) denying injunctive relief will not harm Ms. Sumrall for the reasons stated above, but (2) granting an injunction harms Ms. Ali because it continues to treat her as a criminal after she has been found not guilty, and prevents her from fully exercising her First Amendment right to demonstrate. For the same reason, the public interest is not served by an injunction: it would violate Ms. Ali's First Amendment rights. It is Ms. Sumrall's choice to attend or not attend a Pro-Palestinian demonstration as a counter demonstrator to aggressively confront and provoke the demonstrators. Ms. Ali has nothing to do with that choice.

## CONCLUSION

For the reasons stated above the Court should deny Plaintiff's Motion for a TRO and Preliminary Injunction.

July 19, 2025                                Respectfully submitted,

                                                         /s/ *Frank Panopoulos*
                                                         Frank Panopoulos, DC Bar No. 459365
                                                         26 Trailridge Ct.
                                                         Potomac, MD 20854
                                                         fpanopoulos@icloud.com
                                                         Tel: 301-956-4249

**APPENDIX**

