UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIMMARA SUMRALL<br><br>PLAINTIFF,<br><br>v.<br><br>JANINE ALI<br><br>DEFENDANT. | CASE NO. 1:25-cv-02277 (TNM) |

### DEFENDANT JANINE ALI'S MEMORANDUM IN SUPPORT OF HER MOTION TO STRIKE PORTIONS OF THE FIRST AMENDED COMPLAINT

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Defendant Janine Ali moves to strike the new additions in Plaintiff's First Amended Complaint (ECF 38) identified below because they are based upon bigoted claims about Muslims, racist generalizations about Arabs, and are irrelevant.

These additions, moreover, do not change Ms. Ali's arguments in her Motion for Reconsideration (ECF 30) and (now mooted) Motion to Dismiss the Verified Complaint (ECF 37). Accordingly, Ms. Ali will file a renewed Motion to Dismiss the First Amended Complaint pursuant to the Court's November 3, 2025 Minute Order.

### LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike any matter that is "redundant, immaterial, impertinent, or scandalous." Although a motion to strike generally is disfavored, a court has liberal discretion to strike such filings as it deems appropriate under the Rule. *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003).

1

## ARGUMENT

The Amended Complaint adds a new sentence to paragraph 4 about Ms. Ali's ethnicity and faith, and twelve new paragraphs, 40-51, containing Plaintiff's selective version of 1400 years of anti-Jewish history related to Palestine, going back to Mohammad and including a discussion of Adolf Hitler as a factor in anti-Jewish prejudice in Palestine, under a new section titled "The Israeli-Palestinian conflict is an Ethno-Religious rather than Political Conflict."

The new sentence in paragraph 4 describes Ms. Ali as: "a Palestinian-American and a devout Muslim." When read in the context of Plaintiff's historical narrative in paragraphs 40-51, the sentence insinuates that by virtue of her ethnicity and faith, Ms. Ali antagonizes and hates Jewish people. The insinuation is stated explicitly in paragraphs 40 and 51 of the Amended Complaint. Plaintiff states in paragraph 40: "Taking sides in the [Israeli-Palestinian] conflict, especially through acts of violence disguised as mere 'political' protest against Israel, need be considered through the lens of jihadist antisemitism. *This is especially true when the purported 'protester' falls on the Palestinian Muslim side of the ethno-religious divide* and the victim is on the Jewish side." (Emphasis added). In paragraph 50, Plaintiff states: "Defendant's anti-Israel positions, especially including her resorting to physical violence against a Jewish person associating with Israel, cannot be divorced from the greater jihadist opposition to the Jewish State from the earliest days of Israel's re-birth." Taken together, the addition to paragraph 4 and the argument in paragraphs 40 and 51 is pure bigotry against Muslims and racism against Arabs: because Ms. Ali is a "Palestinian-American and a devout Muslim," she must be engaging in "jihadist antisemitism," and that is why she resorted to alleged physical violence against Plaintiff. By making these statements, Plaintiff implicitly concedes her allegations do not stand on their own

but require the context of racist generalizations. It also ignores that this case involves Ms. Ali's participation in a vigil organized by a Jewish led group.

Such a racist allegation should be stricken under Rule 12(f) because it is scandalous; that is, it "'unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court.'" *Pigford*, 215 F.R.D. at 4 (quoting 2 *Moore's Federal Practice* § 12.37[3] at 12-97 (3d ed. 2002)). In *Pigford*, plaintiffs' class counsel alleged defense counsel had the "same racist attitude as U.S.D.A. workers who systematically destroyed . . . the lives of farmers, simply because they were black," and "contempt for lawyers of color." *Pigford*, 215 F.R.D. at 3. The court struck the allegations pursuant to Rule 12(f), holding that "charges of racism are plainly scandalous within the meaning of the Rule, in that they improperly cast a derogatory light on" defense counsel. *Id.* at 4. *See also Bd. of Educ. v. Bd. of Educ.*, No. 06 C 2005, 2006 U.S Dist. LEXIS 46490, at *10 (N.D. Ill. July 10, 2006) (holding that "redundant allegations of discriminatory remarks appear intended to cast a derogatory light on defendants and must therefore be stricken"). Indeed, "the grounds for a motion to strike do not include falsity of the matter alleged. The question is whether the allegations impugn [defendant's] character." *Bartlett v. SAL*, No. 19-CV-7, 2021 U.S. Dist. LEXIS 258420, at *20-21 (E.D.N.Y. Aug. 5, 2021) (cleaned up) (striking as scandalous allegations that defendant founded terrorist supporting banks).

Plaintiff's addition to paragraph 4 and the argument in paragraphs 40 and 51 similarly impugn the moral character of Ms. Ali based upon her race and religion, improperly casts a derogatory light on her, and is repulsive language that detracts from the dignity of the court. Accordingly, it should be stricken. Ms. Ali is an American citizen born in Dearborn, Michigan and has the constitutional right to oppose a foreign nation perpetrating what many authorities consider a genocide.

Plaintiff's version of history in paragraphs 40-51 should also be stricken because it is irrelevant to this case. These paragraphs are added to expand "the context" of the alleged assault beyond what happened on November 13, 2024, to include a history as far back as the seventh century C.E. of what Plaintiff believes is the historical narrative of antisemitism in the Middle East. *See* Am. Compl. ¶ 20 (Plaintiff "provides relevant background circumstances to ensure a complete record.").

But the context of the alleged assault is what happened between Ms. Sumrall and Ms. Ali on November 13, 2024, not what happened in relations between Muslims and Jewish people over the past 14 centuries. Defendant has documented the context of November 13th. Ms. Ali was at the Dirksen Senate building to participate in a lobbying protest that involved walking through the hallways of the building mourning the children killed in Gaza by the Israeli bombing and handing out postcards of those children to Senate staff. Ms. Sumrall showed up with her group to counterprotest. Ms. Ali did not say anything to Ms. Sumrall when she passed behind her. Ms. Sumrall was facing away from Ms. Ali and on the phone talking. In this context, the alleged tugging on the Israeli flag cannot be considered antisemitic. The multi-century version of history by Plaintiff does not provide context to the alleged assault; what it does, rather, is insinuate that Ms. Ali was acting according to Plaintiff's narrative because she is a Palestinian Muslim, which as explained above is Islamophobic racism. The narrative is irrelevant and it is beneath the dignity of this Court to permit such bigoted material to serve as the basis of an amended complaint. *See Lee v. Raby Inst. Of Integrated Med.*, No. 20 CV 7254, 2023 U.S. Dist. LEXIS 241139, at *21-22 (Feb. 1, 2023, N.D. Ill.) (noting the "rambling narrative" in plaintiff's first amended complaint that included "facts that do not bear on the[] claims," and striking "a litany of alleged 'bad faith business practices' by the defendant "that have little or no discernable relevance to the specific

claims on which the plaintiff can proceed"); 2 *Moore's Federal Practice* § 12.37[3] ("An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action.").

Plaintiff essentially asks the court to accept her version of an historical narrative about antisemitism in order to adjudicate a personal dispute involving opposing views of the Gaza conflict. In other words, she seeks to have this court impose her view of what is arguably the most hotly contested issue of contemporary times by judicial fiat. The First Circuit recently rejected a similar request by Jewish students at the Massachusetts Institute of Technology. In that case, *Stand With Us Center for Legal Justice v. M.I.T.*, No. 24-1800 (1st Cir. Oct. 21, 2025), demonstrations on the M.I.T. campus supporting Palestinians and opposing Israel's bombing of Gaza led Jewish students to sue M.I.T. for failing to curtail the protests, which they argued constituted antisemitic harassment because in their view, support for Israel is synonymous with Judaism. *Id.*, Slip Op. at 2. In rejecting the students' argument that criticism of Israel is inherently antisemitic, the Court explained:

> To support their claim of antisemitism, plaintiffs point to the protestors' opposition to Zionism, which they argue is inherently antisemitic. . . . Under this framework, plaintiffs also treat as antisemitic any criticism of Israel's conduct in Gaza, any suggestion that violence by Palestinians can be understood as resistance to colonial rule and Israeli expansion, and any implication that Palestinians should govern -- or even simply be "free" -- in all of Palestine (i.e., "from the river to the sea").
>
> Plaintiffs are entitled to their own interpretive lens equating anti-Zionism (as they define it) and antisemitism. *But it is another matter altogether to insist that others must be bound by plaintiffs' view*. Plaintiffs' equation finds no consensus support in dictionary definitions. . . . Nor does a review of the academic literature point to any consensus that criticism of Zionism is antisemitic. . . . This absence of consensus reflects ongoing debate as to the relationship between anti-Zionism and antisemitism – *debate that our constitutional scheme resolves through discourse, not judicial fiat*. . . .
>
> [N]or can the possibility that antisemitism motivates one speaker's anti-Israel speech justify assuming that all criticism of Israel or advocacy for Palestinian

5

sovereignty is motivated by antisemitism. We therefore reject plaintiffs' claimed right to stifle anti-Zionist speech by labeling it inherently antisemitic.

*Id.*, Slip Op. at 28-32 (emphasis added, footnote citations to academic and other sources omitted).

This Court should likewise reject Plaintiff's one-sided view of the conflict. Plaintiff's attempt to present a blood-and-soil nationalistic narrative as "facts" detracts from the dignity of this United States Court, improperly maligns Ms. Ali, and has no place in judicial proceedings in this country.

## CONCLUSION

For the reasons stated above, the Court should strike the new sentence in paragraph 4 and new paragraphs 40-51 in the First Amended Complaint.

Dated: November 5, 2025.                    Respectfully Submitted,

/s/ *George R.A. Doumar*
George R.A. Doumar, D.C. Bar No. 415446
Raj H. Patel, D.C. Bar No. 240973
Doumar Martin, PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, Virginia 22209
Tel: (703) 243-3737
gdoumar@doumarmartin.com
rpatel@doumarmartin.com

/s/ *Frank Panopoulos*
Frank Panopoulos, DC Bar No. 459365
26 Trailridge Ct.
Potomac, MD 20854
Tel: (301) 956-4249
fpanopoulos@icloud.com

/s/ *Jenin Younes*\*
Jenin Younes, DC Bar No. 90021577
National Legal Director
American-Arab Anti-Discrimination Committee

910 17th Street Northwest
Washington, DC 20006
Tel: (202) 244-2990
jyounes@adc.org

*admitted pro hac vice only*

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2025, I caused a true and correct copy of the foregoing Memorandum to be served via ECF upon all counsel of record via the Court's CM/ECF system.

*/s/ George R.A. Doumar*
George R.A. Doumar, D.C. Bar No. 415446
Raj H. Patel, D.C. Bar No. 240973
Doumar Martin, PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, Virginia 22209
Tel: (703) 243-3737
gdoumar@doumarmartin.com
rpatel@doumarmartin.com

*Counsel for Defendant*

7