**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **KIMMARA SUMRALL**<br>*Plaintiff,*<br>v.<br>**JANINE ALI**<br>*Defendant.* | ) | **Case No. 1:25-cv-02277** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR INTERLOCUTORY REVIEW CERTIFICATION**

## TABLE OF CONTENTS


INTRODUCTION ..... 1

STANDARD OF REVIEW ..... 1

ARGUMENT ..... 2

I. Substantial grounds do not exist for a difference of opinion on the scope of the Equal Benefit Clause ..... 2

A. The 1991 Amendments to § 1981 statutorily overruled all but one of Defendant's supportive appellate authorities, half of which were mere dicta ..... 3

B. Defendant's supportive binding appellate authority is otherwise substantially unconvincing, as is her statutorily overruled and dicta authorities ..... 7

II. Defendant does not present a controlling question of law, and its resolution will not materially advance the termination of this case ..... 11

CONCLUSION ..... 14

## TABLE OF AUTHORITIES

### CASES

*Adams v. Boy Scouts of America-Chickasaw Council*
271 F.3d 769 (8th Cir. 2001) .......... 7-8

*Agudas Chasidei Chabad of the United States v. Russian Federation*
19 F.4th 472 (D.C. Cir. 2021) .......... 2

*Allee v. Medrano*
416 U.S. 802 (1974) .......... 4

*Banks v. C&P Telephone Co.*
802 F.2d 1416 (D.C. Cir. 1986) .......... 10

*Bilello v. Kum & Go, LLC*
374 F.3d 656 (8th Cir. 2004) .......... 8

*Bobbitt ex rel. Bobbitt v. Rage Inc.*
19 F. Supp. 2d 512 (W.D.N.C. 1998) .......... 5

*Central Presbyterian Church v. Black Liberation Front*
303 F. Supp. 894 (E.D. Mo. 1969) .......... 8

*Chapman v. Higbee Co.*
256 F.3d 416 (6th Cir. 2001) .......... 7

*Chapman v. Higbee Co.*
319 F.3d 825 (6th Cir. 2003) .......... 7

*Davis v. Department of Justice*
610 F.3d 750 (D.C. Cir. 2010) .......... 5

*Elmore v. Harbor Freight Tools USA, Inc.*
844 F.3d 764 (8th Cir. 2016) .......... 8

*Flavell v. International Bank for Reconstruction & Development*
No. 20-623 (CKK), 2021 U.S. Dist. LEXIS 108246 (D.D.C. June 9, 2021) .......... 2

*FTC v. Surescripts, LLC*
No. 19-1080 (JDB), 2020 U.S. Dist. LEXIS 89517 (D.D.C. May 21, 2020) .......... 2-3, 8

*Gluck v. Raleigh Police Officer D.M. Askegaard*
2026 U.S. Dist. LEXIS 185464 (E.D.N.C. July 21, 2026) .......... 4

*Gluck v. Raleigh Police Officer D.M. Askegaard*
2026 U.S. Dist. LEXIS 186782 (E.D.N.C. Aug. 14, 2026) .......... 4

*Griffin v. Breckenridge*
403 U.S. 88 (1971) .......... 11

*Harris v. Secretary, U.S. Department of Veterans Affairs*
126 F.3d 339 (D.C. Cir. 1997) .......... 13

*In re Vitamins Antitrust Litigation*
No. 99-0197 (TFH), 2002 U.S. Dist. LEXIS 25788 (D.D.C. Jan. 16, 2002)............... 11-12

*Jones v. Alfred H. Mayer Co.*
392 U.S. 409 (1968)..........................................................................................10

*Jones v. Poindexter*
903 F.2d 1006 (4th Cir. 1990) ..............................................................................4

*Jones v. R.R. Donnelley & Sons Co.*
541 U.S. 369 (2004)............................................................................................5

*Lambro v. United States*
180 Fed. Cl. 304 (2026) ............................................................................... 2-3, 7

*Mahone v. Waddle*
564 F.2d 1018 (3d Cir. 1977)..................................................................... 3, 6, 8-9

*Miller v. Gammie*
335 F.3d 889 (9th Cir. 2003) ......................................................................... 10-11

*Molock v. Whole Foods Market Group, Inc.*
317 F. Supp. 3d 1 (D.D.C. 2018)..................................................................3, 12

*Northeast Florida Chapter of Associated General Contractors of America v. City of Jacksonville*
508 U.S. 656 (1993)........................................................................................4, 6

*Osborn v. Haley*
549 U.S. 225 (2007)..........................................................................................13

*Palmer v. Board of Education of Community Unit School District 201-U*
46 F.3d 682 (7th Cir. 1995) ...........................................................3-4, 6, 9-10

*Patterson v. McLean Credit Union*
491 U.S. 164 (1989); 784 F. Supp. 268 (M.D.N.C. 1992)......................................5

*Percell v. International Business Machines*
785 F. Supp. 1229 (E.D.N.C. 1992).....................................................................5

*Phillip v. University of Rochester*
316 F.3d 291 (2d Cir. 2003)..................................................................................6

*Provisional Government of the Republic of New Afrika v. American Broadcasting Cos.*
609 F. Supp. 104 (D.D.C. 1985)............................................................................9

*Rivers v. Roadway Express, Inc.*
511 U.S. 298 (1994)............................................................................................5

*Runyon v. McCrary*
427 U.S. 160 (1976).........................................................................................6, 11

*Schuler v. PricewaterhouseCoopers, LLP*
595 F.3d 370 (D.C. Cir. 2010) ............................................................................13

*Seminole Tribe of Florida v. Florida*
517 U.S. 44 (1996)....................10

*Shaare Tefila Congregation v. Cobb*
785 F.2d 523 (4th Cir. 1986) ....................4

*Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*
59 F. Supp. 2d 27 (D.D.C. 1999)....................5

*U.S. House of Representatives v. Burwell*
No. 14-1967 (RMC), 2015 U.S. Dist. LEXIS 192901 (D.D.C. Oct. 19, 2015)....................12

*Vantage Commodities Financial Services I, LLC v. Assured Risk Transfer PCC, LLC*
No. 1:17-cv-01451 (TNM), 2019 U.S. Dist. LEXIS 8059 (D.D.C. Jan. 17, 2019).......2, 14

*Wong v. Mangone*
450 F. App'x 27 (2d Cir. 2011) ....................10

*Youngblood v. Hy-Vee Food Stores, Inc.*
266 F.3d 851 (8th Cir. 2001) ....................7–8

**STATUTES**

28 U.S.C. § 1292(b) ....................1

28 U.S.C. § 1367(c)(3)....................13

42 U.S.C. § 1981(c) ....................3

D.C. Code § 22-3704 ....................12

**OTHER AUTHORITIES**

*Antonin Scalia, The Rule of Law as a Law of Rules*
56 U. Chi. L. Rev. 1175 (1989) ....................10

*Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure*
§ 3929 (3d ed. 2021) ....................2

## INTRODUCTION

28 U.S.C. § 1292(b) permits courts to certify orders for interlocutory appellate review when such orders center on controlling questions of law for which there are substantial grounds for a difference of opinion and immediate review is in the interest of judicial economy as a matter of terminating the litigation. As described below, none of these factors are present regarding the scope of the Equal Benefit Clause of § 1981 and whether it reaches private actors, the question for which Defendant seeks certification. There are no substantial grounds for a difference of opinion because three out of four of Defendant's supportive appellate cases have been statutorily overruled by § 1981(c), two were dicta to begin with, and the only out-of-circuit binding appellate authority favoring Defendant's interpretation contains an insubstantial three sentences on the subject matter. Defendant's three non-binding appellate authorities are equally unconvincing and contradict binding Supreme Court precedent. The appellate authorities favoring Plaintiff's positions do not suffer from any of these defects. The scope of the Equal Benefit Clause is also not a controlling question of law because the parties must still litigate the same issues pursuant to D.C. Code § 22-3704, which applies to private actors. Therefore, interlocutory review on § 1981 will do nothing to terminate this litigation and instead add a wholly unnecessary and entirely academic intermediate step. This Court has unfettered discretion in denying certification for interlocutory review, and it should use that discretion here.

## STANDARD OF REVIEW

28 U.S.C. § 1292(b) permits a district court to certify "an order not otherwise appealable" under ordinary circumstances when it determines the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." "A

party seeking certification pursuant to § 1292(b) must meet a high standard to overcome the strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals . . . [I]nterlocutory appeals are rarely allowed" and are instead "reserved for truly exceptional cases." *Flavell v. Int'l Bank for Reconstruction & Dev.*, No. 20-623 (CKK), 2021 U.S. Dist. LEXIS 108246, at *11-12 (D.D.C. June 9, 2021) (citations omitted).

The "determination that appeal is desirable is confided to the discretion of the district judge." *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 19 F.4th 472, 476 (D.C. Cir. 2021) (quoting 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3929 (3d ed. 2021)); *see also Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC*, No. 1:17-cv-01451 (TNM), 2019 U.S. Dist. LEXIS 8059, at *3 (D.D.C. Jan. 17, 2019) (McFadden, J.) ("Whether to allow an interlocutory appeal of a non-final order is left to the discretion of the district court."); *Flavell*, 2021 U.S. Dist. LEXIS 108246, at *12 ("the decision to certify an order for interlocutory appeal is entirely within the district court's discretion"). This discretion is "unfettered." *FTC v. Surescripts, LLC*, No. 19-1080 (JDB), 2020 U.S. Dist. LEXIS 89517, at *9 (D.D.C. May 21, 2020).

## ARGUMENT

### I. Substantial grounds do not exist for a difference of opinion on the scope of the Equal Benefit Clause.

"The threshold for establishing the 'substantial ground for difference of opinion' . . . is a high one. A party's mere disagreement, even if vehement, with a court's ruling on a motion to dismiss does not clear that threshold." *Surescripts*, 2020 U.S. Dist. LEXIS 89517, at *8 (cleaned up). Courts have found that "a direct holding—not merely dicta or a passing sentence—is needed to pose a 'substantial ground for difference of opinion' on an issue." *Lambro v. United States*,

180 Fed. Cl. 304, 311 & n.1 (2026) (collecting cases and noting "district courts have denied interlocutory appeal where a party only raised cases that address th[e] issue in dicta") (cleaned up, citation omitted). Moreover, "an apparent tension among authorities is not sufficient: 'a court must analyze the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute.'" *Surescripts*, 2020 U.S. Dist. LEXIS 89517, at *9 (quoting *Molock v. Whole Foods Mkt. Grp., Inc.*, 317 F. Supp. 3d 1, 5 (D.D.C. 2018)).

Here, three of Defendant's four supportive authorities have been statutorily overruled, and half were dicta to begin with. Her only binding out-of-circuit authority devotes a mere three sentences to the Equal Benefit Clause and is therefore insubstantial. All of her authority suffers from clear defects, not least of which is that it is contradicted by binding Supreme Court authority. Plaintiff's supportive appellate authorities are binding in their circuits, comprehensive, and conform to Supreme Court precedent. This Court should find there are not substantial grounds for a difference of opinion on the scope of the Equal Benefit Clause.

### A. The 1991 Amendments to § 1981 statutorily overruled all but one of Defendant's supportive appellate authorities, half of which were mere dicta.

Three of Defendant's four supportive Equal Benefit cases, across as many circuits, adjudicated a version of § 1981 that no longer exists. They were decided without benefit of the 1991 addition of subsection (c) to § 1981, which reads in full: "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). *Mahone v. Waddle*, 564 F.2d 1018 (3d Cir. 1977) is from 1977. *Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201-U*, 46 F.3d 682 (7th Cir. 1995) was decided in 1995 but critically centered on a cause of action arising before the non-retroactive

§ 1981(c) was passed, with the court noting "the additions made in 1991 would not affect this case." *Id*. at 687.

Finally, *Shaare Tefila Congregation v. Cobb*, 785 F.2d 523, 525 (4th Cir. 1986) was decided in 1986, and recently, one district court in the Fourth Circuit recognized the tension between that case and § 1981(c) in ruling against a private actor defendant's arguments that permitting the plaintiffs to amend their complaint with another Equal Benefit claim would be futile in light of *Shaare Tefila*:

> Defendant Zayyad first argues that the proposed § 1981 "full and equal benefit" claims, like the § 1981 claims already pled against him, are legally insufficient because no state action is alleged. Defendant Zayyad relies on two Fourth Circuit decisions, *Jones v. Poindexter*, 903 F.2d 1006 (4th Cir. 1990), and *Shaare Tefila Congregation v. Cobb*, 785 F.2d 523 (4th Cir. 1986), which required state action to assert a claim under § 1981's Equal Benefit Clause . . . However, the cases upon which Defendant Zayyad relies were decided prior to the 1991 amendment of § 1981, which expressly protects individuals against nongovernmental (i.e. private) discrimination . . . The legal sufficiency of the proposed claims can be addressed along with the other § 1981 claims, and it is therefore recommended that Plaintiffs be allowed to amend their complaint.

*Gluck v. Raleigh Police Officer D.M. Askegaard*, No. 5:25-CV-664-M-KS, 2026 U.S. Dist. LEXIS 185464, at *5-6 (E.D.N.C. July 21, 2026), *report and recommendation adopted*, 2026 U.S. Dist. LEXIS 186782 (E.D.N.C. Aug. 14, 2026).

When Congress makes substantive amendments to a statute upon which contrary authority once controlled, "any challenge to the new law 'presents a different case.'" *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 675 (1993) (quoting *Allee v. Medrano*, 416 U.S. 802, 818 (1974)). Lower courts immediately apply the amended statute without awaiting appellate court confirmation that prior authority has been statutorily superseded. This is exactly what happened with the 1991 addition of subsection (b) to § 1981.

Specifically, in 1989, the Supreme Court held in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) that § 1981's Contract Clause did not apply to post-contract formation conduct such as workplace harassment. Thereafter, "Congress enacted the Civil Rights Act of 1991, which, by the addition of subsection (b) to section 1981, overruled *Patterson's* limited interpretation." *Bobbitt ex rel. Bobbitt v. Rage Inc*., 19 F. Supp. 2d 512, 516 (W.D.N.C. 1998). In *Rivers v. Roadway Express*, *Inc*., 511 U.S. 298, 304 (1994), the Supreme Court itself recognized that Congress "legislatively overrule[d]" *Patterson* and later noted in *Jones v. R.R. Donnelley & Sons Co*., 541 U.S. 369, 371 (2004) that "the 1991 Act overturned that holding." The D.C. Circuit similarly noted "the Civil Rights Act of 1991 . . . 'overruled' the Supreme Court's holding in *Patterson*." *Davis v. Dep't of Justice*, 610 F.3d 750, 754 (D.C. Cir. 2010). Lower courts, including one rehearing *Patterson* itself, understood that Congress nullified *Patterson*, without the need for appellate court acknowledgment, for causes of action arising post-amendment. *See, e.g., Patterson v. McLean Credit Union*, 784 F. Supp. 268, 272 (M.D.N.C. 1992) ("it appears to the Court that, in the abstract, [the amendment] could have an impact on a case such as plaintiff's"); *Percell v. Int'l Bus. Machs*., 785 F. Supp. 1229, 1231 (E.D.N.C. 1992) ("the new Act overrules *Patterson*"); *Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 31 (D.D.C. 1999) ("Congress overruled . . . *Patterson* when it enacted the Civil Rights Act of 1991"). Ultimately, just as § 1981(b) overruled *Patterson*, § 1981(c) overruled *Mahone*, *Shaare Tefila*, and even *Palmer* to the extent it intended to limit the Equal Benefit Clause to state actors.[1]

Ultimately, *Mahone*, *Shaare Tefila*, and *Palmer* cannot be used for arguing a difference of opinion for the simple reason that these cases are authority for a law that ceased to exist

---

[1] As described below, Plaintiff does not read *Palmer* as limiting the Equal Benefit Clause to state actors but rather elucidating in dicta what a claim requires when the state is the offender.

thirty-five years ago. This Court was presented with "a different case" and ruled accordingly. *Jacksonville*, 508 U.S. at 675.

Moreover, the relevant passages in *Mahone* and *Palmer* were dicta. *Mahone* centered on defendants who were acting under color of law, 564 F.2d at 1020-21, rendering its commentary on the application of the Equal Benefit Clause to private actors entirely ancillary to the holding. This was recognized by the Second Circuit, and in turn this Court, in rejecting *Mahone*. *See* ECF No. 46 at 17 (citing *Phillip v. Univ. of Rochester*, 316 F.3d 291 (2d Cir. 2003)). *Palmer* also involved a state actor, a board of education. There, the "plaintiffs . . . abbreviate[d] the clause . . . to 'the full and equal benefit of all laws,'" omitted its restriction to those centered on "security of persons and property," and argued that the government altering school board election rules was a violation. 46 F.3d at 687. The Seventh Circuit rightly held "[i]t is hard to see how any change in the electoral system could deprive black citizens" of the benefit of laws for security of persons and property, also correctly noting § 1981 "forbid[s] disparate treatment," i.e., intentional discrimination, but the rule change "did not treat black and white citizens differently; there was at most a disparate impact." *Id.* With its holding secure, the court engaged in some ancillary discussion on the purpose of § 1981, and this dictum is most naturally read as being limited to the state actor context. As quoted by Defendant:

> § 1981 was designed to remove obstacles to the full participation of blacks in the legal system … *If the state enforces contracts among white persons, it has to give blacks the same benefit*--and in the same way, giving equal damages for equal wrong done. If it affords tort remedies to whites, it must afford equal remedies to blacks. If it prosecutes crimes against whites in order to protect their persons and property, it must prosecute crimes against blacks.

Def.'s Mem. at 4 (quoting *Palmer*, 46 F.3d at 687) (emphasis altered). By this point, the Supreme Court had established the Contract Clause applies to private actors in *Runyon v. McCrary*, 427

U.S. 160 (1976), which an intermediate appellate court cannot overturn. Hence, the above dictum seems to have been issued in reference to how § 1981 might constrain the state. After all, it refers to the state, and only the state, and its obligations. To the extent private actors are read into this passage, this reading would not be limited to the Equal Benefit Clause, running afoul of *Runyon*.

Ultimately, whereas *Mahone* is dictum, albeit admittedly on the application of the Equal Benefit Clause to private actors, *Palmer* is doubly removed in relevance because its dictum is limited to the state. This Court should follow the Court of Federal Claims and others and find that "a direct holding—not merely dicta . . . is needed to pose a 'substantial ground for difference of opinion' on an issue." *Lambro*, 180 Fed. Cl. at 311.

**B. Defendant's supportive binding appellate authority is otherwise substantially unconvincing, as is her statutorily overruled and dicta authorities.**

In light of § 1981(c) overruling the bulk of Defendant's authority, she is left with a *single* appellate case binding on that circuit's lower courts: *Youngblood v. Hy-Vee Food Stores, Inc*., 266 F.3d 851, 855 (8th Cir. 2001). This case, however, cannot be grounds for establishing a meaningful difference of opinion for the simple fact that it devotes only <u>three sentences</u> to the Equal Benefit Clause. While the paucity of analysis is alone dispositive, *Youngblood* otherwise provides no analysis on § 1981(c) and is entirely dependent on *Mahone*—which, as summarized below, has significant shortcomings—and the Sixth Circuit's original opinion in *Chapman v. Higbee Co*., 256 F.3d 416 (6th Cir. 2001), which was vacated and overturned on rehearing in *Chapman v. Higbee Co*., 319 F.3d 825 (6th Cir. 2003) (en banc). Defendant cannot argue that three sentences, supported in half by a case ultimately rejected by the very court that decided it, can form a *substantial* basis for a difference of opinion when the case itself lacks substance.

That the Eighth Circuit did not closely consider the issue is further evidenced by its referring to *Mahone's* relevant dicta as "holding" several months later in *Adams v. Boy Scouts of*

*Am.-Chickasaw Council*, 271 F.3d 769, 777 (8th Cir. 2001). Despite several opportunities, the Eighth Circuit has otherwise not attempted to justify *Youngblood* in the ensuing years. For example, in *Bilello v. Kum & Go, LLC*, 374 F.3d 656, 661 n.4 (8th Cir. 2004), the court acknowledged the Sixth Circuit overturning *Chapman* and hedged that "[u]nder Eighth Circuit practice, we are bound to follow our precedents" and "[e]ven if this circuit, sitting en banc, were to reverse its prior holdings . . . we believe the facts alleged . . . do not support a viable section 1981 equal benefit claim." Similarly, in *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 767 (8th Cir. 2016) (cleaned up), the court again defaulted back to its "cardinal rule . . . that one panel is bound by the decision of a prior panel." The Eighth Circuit's repeated recognition of contrary authority and seeming inability to meaningfully justify or expand upon *Youngblood* against that authority, instead defaulting to stare decisis, further weighs against using this case to argue substantial grounds for a difference of opinion.

As for Defendant's authority statutorily overruled by § 1981(c), all have significant errors obvious on the surface, in addition to substantive analytical errors as exhaustively considered by this Court in its rulings and Plaintiff in briefing. *See, e.g.*, ECF No. 43 at 31-34; ECF No. 46 at 15-19. Plaintiff incorporates that commentary here and reiterates that *Mahone* is internally inconsistent, immediately weighing against it from the outset in "analyz[ing] the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." *Surescripts*, 2020 U.S. Dist. LEXIS 89517, at *9. Specifically, *Mahone* surveyed several prior related cases, 564 F.2d at 1027-28, including *Central Presbyterian Church v. Black Liberation Front*, 303 F. Supp. 894 (E.D. Mo. 1969), which found the Equal Benefit Clause applies to private actors. The Third Circuit noted its "own examination of the language of section 1981 leads us to believe that its reach is as wide as these

cases would indicate" and "[t]he Act was not intended to have merely limited effect; rather, it was to eradicate all discrimination against blacks and to secure for them full freedom and equality in civil rights." *Mahone*, 564 F.2d at 1027-28. Despite this and the clear holding of *Central Presbyterian*, whose "reach" the court had just validated in full, the Third Circuit found the Equal Benefit Clause applies only to state actors, reaching a conclusion unsupported by its own analysis. As this Court correctly noted, "[t]he Fourth and Eighth Circuits have adopted *Mahone's* state action rule without additional analysis." ECF No. 46 at 16. *Shaare Tefila* therefore can be dispensed with on the same grounds as *Mahone*, not to mention this being another strike against the Eighth Circuit's disqualifying cursory review of the issue.[2]

As for *Palmer*, which Plaintiff has not yet had an opportunity to address in prior briefing, some words on its weaknesses are warranted. From the outset, Plaintiff reiterates that the passage Defendant relies upon was limited to the scope of the Equal Benefit Clause's application to state actors without excluding or even considering application to private actors.[3] To the extent one reads the passage as excluding acts of private actors, the decision suffers from multiple analytical shortcomings. First, the court committed the same error as the appellants by truncating the provision, reading it as only entitling one to equal benefit of proceedings but not laws. Second, even on these truncated terms, its reference case of *Patterson* actually recognized § 1981 "covers wholly private efforts to impede access to the courts." 491 U.S. at 177. Third, the dispositive

[2] Defendant's local district court authority of *Provisional Gov't of the Republic of New Afrika v. Am. Broad. Cos.*, 609 F. Supp. 104, 109 (D.D.C. 1985) is similarly dependent on *Mahone* and therefore cannot form a basis for a difference of opinion.

[3] In full, the relevant text is as follows: "We know from *Patterson*, from its predecessors, and from much historical analysis, that § 1981 was designed to remove obstacles to the full participation of blacks in the legal system. . . . If the state enforces contracts among white persons, it has to give blacks the same benefit--and in the same way, giving equal damages for equal wrong done. If it affords tort remedies to whites, it must afford equal remedies to blacks. If it prosecutes crimes against whites in order to protect their persons and property, it must prosecute crimes against blacks. And it must use the same rules when assessing 'punishment, pains, penalties, taxes, licenses, and exactions of every kind.'" *Palmer*, 46 F.3d at 687.

historical analysis in *Jones v. Alfred H. Mayer Co*., 392 U.S. 409, 427-28 (1968) clarifies the Equal Benefit Clause extends far beyond legal participation, a comparatively minor concern against the brutal "private outrage and atrocity [that] were daily inflicted on freedmen." Fourth, the court mistakenly believed what is now codified as § 1981(a) "is the original text from the Civil Rights Act of 1866." *Palmer*, 46 F.3d at 687. However, the original text, as dispositively analyzed in *Jones*, clarified that the statute prohibited private discrimination for all enumerated rights as it mentions and supersedes discriminatory "custom" imposed by the state and private actors alike. 392 U.S. at 422-23, 424 n.31.

In comparison, the authority from the Second and Sixth Circuits, relied on by Plaintiff and this Court, is internally consistent, contains copious analysis, and adheres to unambiguous and binding Supreme Court precedent. Plaintiff incorporates by reference this Court's discussion of *Phillip*[4] and *Chapman*. *See* ECF No. 46 at 17-19.[5]

To briefly recap the issue of precedent, the Supreme Court has noted "[w]hen an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996); *see also Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (quoting Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1177 (1989)) (recognizing "lower courts as

---

[4] Defendant challenges whether *Phillip* is on point because there the plaintiffs alleged the "defendants attempted to trigger a legal proceeding against plaintiffs but would not have taken the same action had white students engaged in the same conduct." Def.'s Mem. at 5. In comparison, there are no legal proceedings here. The Second Circuit later clarified that there need not be a connection to legal proceedings, as recognized by this Court. *See* ECF No. 26 at 11 (quoting *Wong v. Mangone*, 450 F. App'x 27, 30 (2d Cir. 2011) ("[a] § 1981 violation may occur when a private individual injures the security of persons and property in violation of a state law [prohibiting assault and battery] and does so with a racially discriminatory purpose.")). In short, *Phillip* simply found a claim stated on an equal benefit denial of legal proceedings, without negating entitlement to equal benefit of state laws, with *Wong* sustaining a § 1981 finding on the latter.

[5] For reasons discussed at length in briefing, Plaintiff also reads the D.C. Circuit's relevant dicta in *Banks v. C&P Telephone Co*., 802 F.2d 1416 (D.C. Cir. 1986), as supportive. *See* ECF No. 43 at 29-30. Defendant continues to assert *Banks* supports her position. Def.'s Mem. at 4. Regardless, dicta cannot be a substantial basis for a difference of opinion, so *Banks* is of limited relevance here.

being bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis'"). In *Jones*, the Supreme Court applied a general rule—the applicability of the original § 1 of the Civil Rights Act of 1866 as a whole to private actors—to determine that the portion that later became § 1982 applied to private actors. The Supreme Court later confirmed the expansiveness of *Jones's* holding, noting the "holding in *Jones* was that the '[1866] Act was designed to do just what its terms suggest: to prohibit all racial discrimination, whether or not under color of law, with respect to the rights enumerated therein.'" *Runyon*, 427 U.S. at 170. Finally, in *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Supreme Court held that § 1985(3)'s analog to the Equal Benefit Clause applied to private actors. Even if one disagrees that these cases are binding under the rule enunciated in *Seminole*, the nonexistent or otherwise sparse attention given to them by Defendant's authority weighs heavily against using such authority to assert a substantial basis for a difference of opinion.

## II. Defendant does not present a controlling question of law, and its resolution will not materially advance the termination of this case.

"[A] controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of the litigation with resulting savings of the court's or the parties' resources," and "[t]he kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter." *In re Vitamins Antitrust Litig.*, No. 99-0197 (TFH), 2002 U.S. Dist. LEXIS 25788, at *26-27 (D.D.C. Jan. 16, 2002) (citations and internal quotation marks omitted).

Additionally, an interlocutory appeal may "materially advance the ultimate termination of the litigation" when "reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the

parties from needless expense." *Molock*, 317 F. Supp. 3d at 6. Courts will consider, for example, whether possibly unnecessary discovery "promises to be drawn out, complex, and expensive," weighing in favor of an affirmative finding on this factor, "reversal of the court's order would . . . shorten the length of the litigation," or the case instead "could be decided in 'a matter of months' regardless." *Id*. (quoting *U.S. House of Representatives v. Burwell*, No. 14-1967 (RMC), 2015 U.S. Dist. LEXIS 192901, at *5 (D.D.C. Oct. 19, 2015)).

The applicability of the Equal Benefit Clause to private actors cannot be considered a controlling question of law because finding favorably for Defendant on interlocutory appeal would not "require reversal if decided incorrectly." *In re Vitamins*, 2002 U.S. Dist. LEXIS 25788, at *26. Instead, it would require merely cosmetic *partial* reversal with no substantive impact as the parties still must litigate the exact same subject matter pursuant to local tort law. D.C. Code § 22-3704, exactly like § 1981, covers "injury to . . . person or property" motivated by bias against one's race, and, beyond § 1981, religion, national origin, and even personal choices like political affiliation. Therefore, a favorable finding for Defendant on § 1981 will change nothing substantive about the course of litigation. It simply eliminates a cause of action entirely accounted for by D.C. Code § 22-3704. The presence or absence of a § 1981 claim, for example, will not impact how Plaintiff will pursue discovery or the scope of discovery to which she is entitled. Ultimately, a favorable finding for Defendant on interlocutory appeal cannot "materially affect the course of the litigation with resulting savings of the court's or the parties' resources," and is not the kind of question "whose resolution will be completely dispositive of the litigation." *In re Vitamins*, 2002 U.S. Dist. LEXIS 25788, at *27.

As Defendant correctly notes, "[c]ontrolling questions of law include issues that would terminate an action if the district court's order were reversed." Def.'s Mem. at 3. Due to

Plaintiff's state tort claims, not least of which is her claim under D.C. Code § 22-3704, that would not happen upon reversal of this Court's § 1981 finding. Thus, Defendant is also incorrect in arguing "[i]f the D.C. Circuit holds that the Equal Benefit Clause requires state action and reverses the MTD Order, Plaintiff's sole federal claim fails and the action would be dismissed." *Id*. There would be no grounds to dismiss Plaintiff's state tort claims with prejudice, and while Plaintiff might be required to try those in the D.C. Superior Court, that is not guaranteed and considerations of judicial economy would weigh against sending this matter to another judge, possibly entirely unfamiliar with this case, to relitigate claims this Court has already determined should go to the merits.

Were the D.C. Circuit to find favorably for Defendant, it would then be at this Court's discretion under 28 U.S.C. § 1367(c)(3) whether to continue adjudicating those claims. This statute notes that "district courts may decline to exercise supplemental jurisdiction" if the court "has dismissed all claims over which it has original jurisdiction." *Id*. As the D.C. Circuit has noted, "[t]he discretionary language of the statute makes it clear that the court may also choose to preserve its supplemental jurisdiction." *Harris v. Sec'y, U.S. Dep't of Veterans Aff.*, 126 F.3d 339, 346 (D.C. Cir. 1997). It has encouraged district courts to make such an election when they have already meaningfully "invested time and resources in a case," as "[c]onsiderations of judicial economy, convenience and fairness to litigants . . . make it reasonable and proper for a federal court to proceed to final judgment upon the state-law claims." *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 378 (D.C. Cir. 2010) (quoting *Osborn v. Haley*, 549 U.S. 225, 245 (2007)) (internal quotation marks omitted).

This Court has already expended significant time and resources on this case, up to and including a preliminary injunction merits hearing with witnesses, adjudicating not only

Plaintiff's federal claim but also her state tort battery claim. This Court also exhaustively analyzed Plaintiff's state-law claims in opining against dismissing all but one. While this Court would undoubtedly have the discretion to dismiss this case, there are no grounds for dismissal with prejudice and D.C. Circuit authority would encourage this Court to stay the course. Defendant therefore lacks grounds to predict a case-terminating dismissal.

Finally, as this Court found in *Vantage Commodities*, "an immediate appeal would not advance litigation here. An appeal now would delay the discovery period, summary judgment briefing, and the final resolution of this case." 2019 U.S. Dist. LEXIS 8059, at *7.

**CONCLUSION**

Defendant's request for interlocutory review should be denied because it satisfies none of § 1292(b)'s requirements. There is no substantial ground for difference of opinion where Defendant's principal authorities either predate § 1981(c), rest on dicta, or provide only cursory analysis. In comparison, this Court's ruling accords with the statute's current text and binding Supreme Court precedent, as clarified by highly detailed authority from the Second and Sixth Circuits. Nor does Defendant present a controlling question of law, because reversal of the § 1981 ruling would leave Plaintiff's parallel claim under D.C. Code § 22-3704 intact, and this Court would retain discretion to exercise supplemental jurisdiction over Plaintiff's surviving state-law claims, particularly given the substantial resources it has already invested in this matter. Accordingly, the Court should exercise its discretion to deny certification and permit this case to proceed toward final judgment.

Date: September 24, 2026

Respectfully submitted,

*/s/ Matthew Mainen*
Matthew Mainen
National Jewish Advocacy Center
3 Times Square, Suite 512
New York, NY 10036
matt@njaclaw.org
(332) 278-1100 Ext. 707
D.D.C. Bar No. MD0200